**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **RANDALL J. STANTON,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**GERRI POOLE, R.N.,**<br>**CAPTAIN MARIE HALL,**<br>**C/O COOK (a/k/a John Doe 1),**<br>**C/O ALEX (a/k/a John Doe 2),**<br>**C/O JOHN DOE 3**<br>**and C/O JANE DOE 1,**<br><br>**Defendants.** | ) | **Case No. 26-cv-00486-JPG** |

# **MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff Randall Stanton brought a *pro se* civil rights action pursuant to 42 U.S.C. § 1983 for constitutional deprivations that occurred during his arrest and detention at Franklin County Jail ("Jail"). *See Stanton v. Easter, et al.*, No. 26-cv-00062-NJR (S.D. Ill.). The Court screened and severed two claims against the Jail's staff for inadequate medical care (Count 7) and interference with his court access (Count 8). Plaintiff then filed an unsigned Second Amended Complaint (Doc. 14) focusing on these two claims, and he replaced it with a signed Third Amended Complaint (Doc. 18).

The Third Amended Complaint is before the Court for review under 28 U.S.C. § 1915A, which requires screening and dismissal of portions that are legally frivolous or malicious, fail to state a claim for relief, or seek money damages from a defendant who is immune from such relief. *Id.* At this stage, the allegations are liberally construed in favor of the *pro se* plaintiff. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

**Third Amended Complaint**

Plaintiff sets forth the following allegations (Doc. 18, pp. 1-13): Plaintiff complains of inadequate medical care during his pretrial detention at Franklin County Jail from September 9, 2025 through February 5, 2026. *Id.* at ¶ 2. He was transported from the Jail to a hospital emergency room with dangerously high blood pressure in September 2025. *Id.* at ¶ 13. The ER physician determined that Plaintiff's condition warranted treatment with a cardiologist or nephrologist within two days, and the physician issued a written order to this effect. *Id.* at ¶ 14.

When Plaintiff returned to the Jail, Nurse Gerri Poole processed the ER physician's orders, evaluated the plaintiff, and refused to schedule an appointment with a specialist for five months. *Id.* at ¶¶ 7, 15, 18-19. Nurse Poole instead treated Plaintiff with a cocktail of prescription medications which she packaged for simultaneous use while disregarding warnings of harmful drug interactions, strokes, seizures, organ damage, or death. *Id.* at ¶¶ 7, 16-17, 21-25. The polypharmacy regimen included multiple blood pressure medications, antidepressants, and Trazadone—on top of what he was already taking. The nurse repeatedly altered these medications without canceling prior orders, resulting in his ingestion of up to twelve pills at a time. *Id.* at ¶ 23. Nurse Poole also charged Plaintiff for each medication she unnecessarily provided to him throughout his detention. *Id.* at ¶ 27.

C/O Cook (a/k/a John Doe 1), C/O John Doe 3, and C/O Jane Doe 1 routinely distributed medications to Plaintiff during the second shift. *Id.* at ¶¶ 9, 11-12, 56-61. When they missed scheduled medication times, all three officers would administer multiple doses of medication at once to "catch up." *Id.* They knew that this could cause an overdose. *Id.* Plaintiff reported severe side effects to each defendant, and they observed his extreme drowsiness and confusion. *Id.* at ¶¶

9-12, 32-36, 56-61. Even though they were aware of his severe reaction and serious risk of overdose, the officers continued this dangerous practice. *Id.*

C/O Alex (a/k/a John Doe 2) distributed medications to Plaintiff during the night shift. *Id.* at ¶ 10. This officer personally observed Plaintiff suffer a grand mal seizure after ingesting excessive medications prescribed to him by Nurse Poole. *Id.* at ¶¶ 10, 37-44. The need for emergency medical treatment was obvious. *Id.* Even so, the officer failed to request medical assistance. *Id.* C/O Alex dragged Plaintiff's unconscious body across the floor and placed him in a holding cell without medical evaluation or aid. *Id.* at ¶¶ 41-42. When he regained consciousness several hours later, Plaintiff had urinated on himself and bitten his tongue without receiving any medical intervention or treatment. *Id.* at ¶¶ 43-44.

Plaintiff eventually began suffering from severe gastrointestinal bleeding and passed significant amounts of blood in his stool. *Id.* at ¶¶ 45-46. He submitted urgent medical requests to Nurse Poole, who reviewed them and demanded visual confirmation of the bleeding before treating him. *Id.* at ¶ 47. Plaintiff was placed in a holding cell with a toilet to defecate. *Id.* at ¶ 48. He produced a stool sample that was "full of visible blood" for inspection. *Id.* at ¶ 49. When Plaintiff informed Captain Hall that the toilet contained a bloody stool, the captain intentionally left him locked in the cell with his own waste for almost six hours. *Id.* at ¶¶ 49-51. When Nurse Poole learned about the bloody stool, she refused to examine Plaintiff or send him out for any diagnostic tests. *Id.* at ¶¶ 52-55. Instead, Nurse Poole prescribed a hemorrhoid suppository, which Plaintiff described as a "medically baseless treatment she knew was unresponsive to Plaintiff's serious internal bleeding." *Id.* at ¶ 54.

Plaintiff submitted dozens of written requests for medical treatment to Nurse Poole. *Id.* at ¶ 29. In them, he sought treatment for severe dizziness and confusion associated with his excessive

medication. Plaintiff reported feeling like he was "dying daily." *Id.* Nurse Poole reviewed each one of these urgent requests but failed to adjust his treatment plan, order tests, or provide appropriate care. *Id.* at ¶ 30. Captain Hall also received numerous grievances from Plaintiff about his deteriorating health and inadequate medical care. *Id.* at ¶¶ 8, 31. She reviewed and denied each one without an investigation. *Id.*

Just before his release, Plaintiff was repeatedly administered a narcotic drug, *i.e.*, Suboxone, by C/O Cook, C/O John Doe 3, and/or C/O Jane Doe 1. *Id.* at ¶¶ 70-71. Nurse Poole was responsible for authorizing and controlling the administration of all medications at the time. *Id.* at ¶ 69. Plaintiff had no prescription for Suboxone and did not consent to its administration. *Id.* at ¶ 72. He tested positive for narcotics when he visited the emergency room immediately after his release from custody on February 5, 2026. Plaintiff now claims that these defendants knew, or should have known, that they were administering an unprescribed narcotic which violated his bodily integrity and caused him to suffer severe symptoms of withdrawal. *Id.* at ¶¶ 73-75.

While monitoring his communications at the Jail, Captain Hall learned that Plaintiff intended to file an appeal of his preliminary hearing waiver, which he described as a "non-frivolous legal challenge to his ongoing detention." *Id.* at ¶¶ 62-64. At the time, he faced a 30-day deadline for filing the appeal. *Id.* at ¶ 63. Captain Hall cut off all communication privileges (*i.e.*, phone, tablet, and mail) during the dates that corresponded precisely with Plaintiff's time-sensitive appeal deadline. *Id.* at ¶¶ 65-66. Plaintiff filed several grievances about the matter with Captain Hall, and he emphasized his "desperate" need to restore communications to meet the appeal deadline. *Id.* at ¶ 67. Captain Hall received and denied every grievance. *Id.* at ¶¶ 67-68. Due to Captain Hall's interference with Plaintiff's access to the courts, he was unable to file a timely appeal. *Id.*

## Discussion

The Court deems it appropriate to re-organize the *pro se* Third Amended Complaint into the following enumerated counts:

**Count 1:** Fourteenth Amendment medical claim against Nurse Poole for disregarding the ER physician's referral order from September 2025 and administering excessive medications that caused or exacerbated Plaintiff's high blood pressure, seizure(s), and gastrointestinal bleeding, among other things.

**Count 2:** Fourteenth Amendment medical claim against C/O Cook (a/k/a John Doe 1), C/O John Doe 3, and C/O Jane Doe 1 for administering "catch up" doses of medication during the second shift and denying Plaintiff medical care for the resulting serious side effects, including high blood pressure, a seizure, gastrointestinal bleeding, dizziness, and confusion.

**Count 3:** Fourteenth Amendment medical claim against C/O Alex (a/k/a John Doe 2) for denying Plaintiff medical care for a grand mal seizure.

**Count 4:** Fourteenth Amendment medical claim against Nurse Poole and Captain Hall for disregarding Plaintiff's complaints of rectal bleeding.

**Count 5:** Fourteenth Amendment medical claim against Nurse Poole, C/O Cook (a/k/a John Doe 1), C/O John Doe 3, and/or C/O Jane Doe 1 for administering Suboxone without a prescription and without Plaintiff's consent in violation of his right to bodily integrity on or around February 5, 2026.

**Count 6:** First and/or Fourteenth Amendment against Captain Hall for denying Plaintiff access to the court by restricting outside communication by phone, tablet, and mail during the 30-day appeal period for his preliminary hearing waiver.

**Any claim that is mentioned in the Third Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[1]

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**Counts 1, 2, 3, and 4**

To articulate a claim for the denial of medical care under the Fourteenth Amendment, a pretrial detainee must set forth allegations suggesting that each defendant acted purposefully, knowingly, or perhaps even recklessly in connection with the plaintiff's medical treatment, and the challenged conduct was objectively unreasonable based on the "totality of the facts and circumstances faced by the individual alleged to have provided inadequate medical care." *McCann v. Ogle Cty., Ill.,* 909 F.3d 881, 886 (7th Cir. 2018) (citing *Miranda v. County of Lake*, 900 F.3d 335, 352 (7th Cir. 2018)). The allegations suggest that Defendants responded to Plaintiff's serious medical conditions in an objectively unreasonable manner when: in Count 1, Nurse Poole disregarded Plaintiff's ER physician's orders for treatment with a specialist and prescribed Plaintiff a cocktail of medications that caused serious side effects; in Count 2, C/O Cook (a/k/a John Doe 1), C/O John Doe 3, and C/O Jane Doe 1 administered "catch up" doses of medication that caused serious side effects; in Count 3, C/O Alex (a/k/a John Doe 2) denied him treatment during and after a grand mal seizure; and, in Count 4, Nurse Poole and Captain Hall disregarded Plaintiff's complaints of rectal bleeding. Counts 1, 2, 3, and 4 survive screening under the Fourteenth Amendment[2] against the individual defendants named in connection with each claim.

**Count 5**

In Count 5, Plaintiff brings a Fourteenth Amendment due process claim against Nurse Poole, C/O Cook (a/k/a John Doe 1), C/O John Doe 3, and/or C/O Jane Doe 1 for their alleged violation of his bodily integrity and/or right to refuse medical care when they administered Suboxone without a prescription or his consent. The Fourteenth Amendment prohibits the

---

[2] Because Plaintiff describes himself as a detainee, the Court has analyzed his claims under the legal standard applicable to pretrial detainees, *i.e.*, Fourteenth Amendment. However, the allegations also support claims under the Eighth Amendment deliberate indifference standard applicable to convicted persons.

deprivation of life, liberty, or property without due process of law. U.S. CONST. amend XIV. The Fourteenth Amendment Due Process Clause is "part procedural, part substantive." *Halgren v. City of Naperville*, 577 F. Supp. 3d 700, 727 (N.D. Ill. 2021). The procedural component promotes fairness by ensuring that the government follows proper procedures when depriving a person of life, liberty, or property, while the substantive component bars certain government actions "regardless of the fairness of the procedures used" to "prevent[ ] legislative power from being used as a force of oppression." *Id*. at 727 (citations omitted).

Plaintiff brings his claim under the substantive due process clause, which has a very limited scope. Unless a government practice "encroaches on a fundamental right, substantive due process requires only that the practice be rationally related to a legitimate government interest. . . ." *Id*. (quoting *Platt v. Brown*, 872 F.3d 848, 852 (7th Cir. 2017)). Where a fundamental right is at stake, however, a government regulation must be "necessary to serve a compelling state interest" and "narrowly drawn to achieve that end." *Id*. at 727-28 (quoting *Burson v. Freemon*, 504 U.S. 191, 198 (1992)). Fundamental liberty interests include "the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity." *See Sung Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). The Supreme Court has also "assumed and strongly suggested that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (citing *Cruzan by Cruzan v. Director, MO Dep't of Health*, 497 U.S. 261, 278-79 (1990) (A "competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment."). In addition, the Court has held that prisoners possess "a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment." *Washington v. Harper*, 494 U.S. 210, 221-22 (1990).

Against this backdrop, Plaintiff claims his right to bodily integrity and/or to refuse unwanted medical care was violated by Defendants. Whether considered a fundamental right (triggering heightened scrutiny) or not (triggering rational basis review), the right at issue clearly falls within the scope of Fourteenth Amendment protections. And, the Court must balance Plaintiff's liberty interest against the relevant state's interests when determining whether his constitutional rights were violated. *See Cruzan*, 497 U.S. at 279; *Washington*, 494 U.S. at 227 (holding that inmate's right to refuse unwanted medication was outweighed by the state's overriding interest "in combating the danger posed by a person to both himself and others" in the prison environment); *Turner v. Safley*, 482 U.S. 78, 84 (1987) (holding that prisoners are entitled to constitutional protections, but their due process rights may be "subject to substantial restrictions as a result of incarceration"). At this early stage, Plaintiff has articulated a Fourteenth Amendment substantive due process claim against Nurse Poole, C/O Cook (a/k/a John Doe 1), C/O John Doe 3, and/or C/O Jane Doe 1, so Count 5 survives preliminary review.

**Count 6**

Pretrial detainees and prisoners, alike, have a fundamental right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977); *Casteel v. Pieschek*, 3 F.3d 1050, 1053 (7th Cir. 1993). When determining whether a prison administrator has interfered with this right, the Court applies a two-part test. *Smith v. Shawnee Library Sys.*, 60 F.3d 317 (7th Cir. 1995); *Jenkins v. Lane*, 977 F.2d 266, 268 (7th Cir. 1992). First, the plaintiff must show that officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins*, 977 F.2d at 268 (quoting *Bounds*, 430 U.S. at 828). Second, the plaintiff must show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of

plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *Jenkins*, 977 F.2d at 268. Plaintiff alleges that Captain Hall's outright ban on all outside communications during the 30-day appeal period precluded him from filing a timely appeal in his criminal case. At this early stage, Count 6 survives screening against Captain Hall.

## **Identification of Unknown Defendants**

Counts 2, 3, and 5 survive screening against unknown defendants, including C/O Cook (a/k/a John Doe 1), C/O Alex (a/k/a John Doe 2), C/O John Doe 3, and/or C/O Jane Doe 1. These defendants must be identified by their first and last names so that this lawsuit can be served on them. Plaintiff will have an opportunity to engage in limited discovery to ascertain the identity of the defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). The Franklin County Jail Administrator shall be added as a defendant, in an official capacity, and is responsible for responding to discovery aimed at identifying each unknown defendant by name. Once the names of the unknown defendants are discovered, Plaintiff must file a motion to substitute the newly identified defendants in place of the generic designations in the Third Amended Complaint.

## **Disposition**

**IT IS ORDERED** that the Third Amended Complaint (Doc. 18) survives screening under 28 U.S.C. § 1915A. The following claims will proceed past screening:

- **COUNT 1** against **GERRI POOLE**.
- **COUNT 2** against **C/O COOK, C/O JOHN DOE 3,** and **C/O JANE DOE 1**.
- **COUNT 3** against **C/O ALEX**.
- **COUNT 4** against **GERRI POOLE and CAPTAIN MARIE HALL**.

- **COUNT 5** against **GERRI POOLE, C/O COOK, C/O JOHN DOE 3,** and **C/O JANE DOE 1**.

- **COUNT 6** against **CAPTAIN MARIE HALL**.

The **FRANKLIN COUNTY JAIL ADMINISTRATOR (official capacity only)** is **ADDED** as a defendant for purposes of responding to discovery aimed at identifying the unknown defendants by their first and last names, according to the instructions and deadlines in the Doe Identification Order that will be entered after this defendant appears.

The Clerk of Court shall prepare for **FRANKLIN COUNTY JAIL ADMINISTRATOR (official capacity only), GERRI POOLE, C/O COOK (a/k/a John Doe 1), C/O ALEX (a/k/a John Doe 2), CAPTAIN MARIE HALL,** and, once identified, **C/O JOHN DOE 3** and **C/O JANE DOE 1**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Third Amended Complaint (Doc. 18), and this Memorandum and Order to each Defendant's place of employment. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS ORDERED** that, if a Defendant can no longer be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Third Amended Complaint (Doc. 18) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to SDIL-Local Rule 8.2, Defendants need only answer the allegations summarized in this Merit Review Order. Because Franklin County Jail's Administrator is only named as a defendant for purposes of identifying the unknown defendants, this defendant need not answer and need only appear in this matter.**

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this Order will cause a delay in the transmission of court documents and may result in dismissal for want of prosecution. FED. R. CIV. P. 41(b).

**The Clerk of Court is DIRECTED to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act and ADD Franklin County Jail Administrator as a defendant in CM/ECF.**

**IT IS SO ORDERED.**

**DATED: 11/19/2026**



**J. PHIL GILBERT**
**United States District Judge**

**Notice**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Third Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Third Amended Complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take 90 days or more. When all defendants have filed answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, in order to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. The plaintiff need not submit any evidence to the court at this time, unless otherwise directed by the Court.